McFADDEN *et al. v.* WELCH *et al.*

(Division A. Nov. 30, 1936.)

[170 So. 903. No. 32422.]

452

I. L. Sheffield, of Fulton, for appellant.

**W. L. Elledge** and **A. T. Cleveland,** both of Fulton, for appellees.

456

**Cook, J.,** delivered the opinion of the court.

On September 28, 1932, R. B. K. McFadden and his wife, Mrs. T. A. McFadden, entered into a contract with their daughter, Mrs. A. E. Welch, and her husband, J. E. Welch, for the support and maintenance of the McFaddens for the balance of their lives. At the time of the execution of this contract, Mr. and Mrs. McFadden were an elderly couple who lived alone on a farm which they had occupied for many years as their homestead. Mr. McFadden was in bad health, and this aged couple had reached the point where they could no longer maintain and care for themselves. Their three children were all married and lived nearby. Mr. McFadden first made a proposition to J. A. Thomas, the husband of one of his daughters, to take over the care and maintenance of himself and wife upon certain stated terms. Mr. Thomas declined the proposition, and a few days later an agreement was reached between said R. B. K. McFadden and Mr. and Mrs. Welch. Mr. McFadden then outlined the terms of the agreement to his son, W. C. McFadden, who usually advised with him about his business affairs, and directed his said son to have his (R. B. K. McFadden's) attorney of many years' standing to incorporate the terms of the agreement into a written contract. The attorney prepared the contract in ac-

cordance with the terms outlined to him, leaving blank the amount of compensation to be paid to Mr. and Mrs. Welch, in excess of the rents, issues, and profits from the farm.

Shortly thereafter, W. C. McFadden, the son of R. B. K. McFadden, and his two daughters, together with their husbands, and the attorney, assembled at the said homestead for the purpose of executing the contract. The contract was read and explained to the assembly by the attorney, and R. B. K. McFadden fixed the money compensation to be paid to the Welches, and at his direction a provision was added that the Welches should not be required to pay physicians' and medical bills. Mrs. T. A. McFadden manifested some hesitation about signing the contract, and she was advised by her son that if she was unwilling to sign it, she need not do so, but after a conference with one of her daughters, without any particular protest, she signed the contract and it was finally executed.

Under the terms of the contract it was agreed that the Welches would move into the home of Mr. and Mrs. McFadden, and operate the farm for the rents, products, and profits to be derived therefrom, and that, in consideration thereof, and the further consideration of ten dollars for each of the McFaddens, the Welches were to provide everything required for the support, health, comfort, and happiness of the McFaddens, except physicians' and medical bills, so long as they should live. It was further provided that the Welches should pay all taxes accrued or to accrue against the property after the year 1932, and that the ten dollars per month compensation provided therein should not be payable until the death of both of the McFaddens, and that the sum accumulated at the death of the McFadden last surviving should be a charge on and payable out of the real estate then owned and occupied by them as a homestead. It was further expressly provided that if the

Welches breached the contract in any respect, they would forfeit all claims against the estate for any compensation accrued, or to accrue.

After the execution of the contract, the Welches moved into the home with Mr. and Mrs. McFadden, and until the death of Mr. McFadden ten months later, they faithfully and fully performed all the obligations imposed upon them by the contract, and no dissatisfaction was expressed by either the father or the mother of Mrs. Welch. Shortly after the death of her husband, Mrs. T. A. McFadden moved into the home of her daughter, Mrs. J. A. Thomas, on account of, as she alleges, "uncongenial relationships in the home of J. E. Welch," and shortly thereafter this suit was filed by Mrs. T. A. McFadden and her daughter, Mrs. J. A. Thomas, seeking the cancellation of the aforesaid contract and partition of the lands belonging to the estate of the deceased. The bill of complaint sought a cancelation of the contract on the ground that at the time of its execution the said R. B. K. McFadden was mentally incapable of understanding or comprehending the terms and conditions thereof, and that he and the complainant, Mrs. T. A. McFadden, were induced to sign the contract by undue influence brought to bear upon them.

At the conclusion of the trial of the cause, the court found that the evidence wholly failed to show mental incapacity of R. B. K. McFadden at the time of the execution of the contract, or that there was any undue influence which induced either of the McFaddens to execute the contract; and dismissed the bill of complaint.

On appeal, the exclusion of the testimony of Mrs. T. A. McFadden and Mrs. J. A. Thomas is assigned as error. These witnesses were offered to show the alleged mental incapacity of R. B. K. McFadden in an effort to strike down the contract which, in effect, materially encumbered the homestead rights of the widow, and the interest of each of the heirs of the estate of the deceased.

The facts here bring the case clearly within the principles announced in Whitehead v. Kirk, 104 Miss. 776, 61 So. 737, 62 So. 432, 51 L. R. A. (N. S.) 187, Ann. Cas. 1916A, 1051, and no error was committed in excluding the testimony of these witnesses.

The appellants also assign as error the admission of the testimony of the widow and daughter of W. C. McFadden, deceased, a son of R. B. K. McFadden. The testimony of these witnesses did not tend to establish any claim of theirs against the estate, but, on the contrary, their testimony tended to support the validity of the contract which materially affected and reduced their right of inheritance, and, consequently, no error was committed in admitting their testimony.

There was no affirmative evidence of undue influence brought to bear upon either Mr. and Mrs. McFadden. The testimony of Mrs. T. A. McFadden was properly excluded, but, as it appears fully developed in the record, it amounted merely to the statement that while she was unwilling to sign the contract, she did so merely to avoid the appearance of being contentious. Testimony to this effect, if it had been admissible, was wholly insufficient to show duress or undue influence which induced her signature, and upon this phase, the case must find its basis, if any, in the presumption of invalidity of the contract arising from a confidential relationship existing between the father, R. B. K. McFadden, and his son, W. C. McFadden.

Assuming for the purposes of this decision the existence of this confidential relationship, the presumption of invalidity does not follow for the reason that the son was, in no sense, a party to the contract, and did not profit thereby financially, but, on the contrary, the contract imposed a material burden and encumbrance upon his right of inheritance which, in the course of events, might consume the entire estate. Furthermore, any such presumption was here met by the showing that R. B.

K. McFadden acted throughout on the advice of an attorney who, for many years, had advised with him and had transacted all his legal business. While some of the testimony of this attorney as to preliminary matters was wholly immaterial and should have been excluded, that part of his testimony could not have affected the decision of the court. The attorney was competent to testify as to conditions existing and matters occurring at the time of the execution of the contract, as there were no confidential consultations, and all matters testified about took place in the presence of numerous persons other than R. B. K. McFadden. There is no suggestion in the evidence of any undue influence exercised by either Mrs. A. E. Welch, or her husband, J. E. Welch.

As to the mental incapacity of R. B. K. McFadden at the time of the execution of the contract, there is some conflict in the evidence; but the testimony is amply sufficient to support the finding of the chancellor that he was not mentally incapacitated to execute the contract. Most of the testimony bearing upon this issue may be summarized in the words of his physician that, "at times his mind was all right, at other times it was not."

The decree of the court below will therefore be affirmed.

Affirmed.